## CHRISTIAN PRE-SCHOOL AND STONE CHURCH, INC. *v.* DEPARTMENT OF REVENUE

W. Dean Fitzwater, Fitzwater & Fitzwater, Portland, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered February 10, 1972.

CARLISLE B. ROBERTS, Judge.

Plaintiff appeals from the Department of Revenue's Opinion and Order No. VL 71-3 which affirmed the Multnomah County Assessor's denial of exemption from property taxation for certain improved real property owned by the plaintiff. Plaintiff prays that this court set aside the Department of Revenue's order and grant it an exempt status under ORS 307.145 for the tax years of 1966 to and including the year 1970. (Exemption had been granted for years prior to 1969 but was revoked under the "omitted property" statute, ORS 311.209.)

Plaintiff, Christian Pre-School and Stone Church, Inc., is and was the owner of improved real property located at 2720-2734 S.E. 17th Avenue, Portland, Oregon. The subject property is also described as Tax Lot 1-3, Block 20, Tibbetts' Addition, Multnomah County, State of Oregon, and will be hereafter referred to as the Pre-School. The improvement is a two-story annex to the Stone Church and is used Monday through Friday throughout the entire year for the Pre-School activities and on each Sunday for Sunday School. The unimproved portion of the real property is a playground which is utilized by the Pre-School children and is also open to the general public.

The Stone Church incorporated in 1954 as a private, nonprofit institution and began the operation of the Pre-School program in 1957. The school is an integral unit of the church corporation and as such its purpose is to preach the "word of God" and provide "Christian activities" throughout the pre-school years in keeping with the overall beliefs and purposes of the Stone Church. The officers of the church corporation, the minister of the Stone Church, his wife, and his son, set the policies for the Pre-School and are responsible to the corporation and to the congregation for such.

The Pre-School opens its doors about 6:30 a.m. and accommodates approximately 50 children throughout the day until some time in the late afternoon (usually between 5 and 6 p.m.) when parents come to take the children home. Testimony at trial indicated that the children (all of whom are of the two-to-six-year-age group) are supervised by a certified kindergarten teacher, the minister's son (who has a Bachelor of Science degree and Master's degree in education from Oregon State University, as well as a Doctorate in

Theology from the Florida seminary) and the minister himself. Moreover, Pre-School has participated in the Head Start program funded by the U.S. Government and receives aid from high school and college students who observe the children and act as teachers' assistants. The Pre-School also employs a full-time cook who prepares the noon lunch and morning and afternoon snacks for the children. (Food supplies are obtained in part from federal and state agencies.) Various parishioners, an occasional social worker and psychologists donate time also.

Evidence presented at trial indicated that the Pre-School follows a flexible schedule of teaching which includes a 9 to 9:15 a.m. "show and tell period" where the children are encouraged to speak in front of their peers; a 9:15 to 9:45 a.m. interval for music, nursery rhymes and a health inspection; a 9:45 to 10 a.m. snack period; a 10 to 10:15 a.m. story period; a 10:15 to 11:30 a.m. arts and crafts time where the children are placed in smaller groups as determined by age; a hot lunch is served at 11:30, followed by a free play period until about 1 p.m.; a 1 to 3:15 p.m. rest period ensues; and the balance of the afternoon is used for religious education and games, until the parents arrive between 5 and 6 p.m.

The tuition rate is $4 per day per student. However, testimony indicated that only about one-fourth of the children pay this figure while about six students pay nothing; the balance of the enrollees pay what they can afford up to the $4 per day per child rate.

Plaintiff contends that the improved real property in question comes within the exempt status of ORS 307.145 as the activities conducted thereon are educa-

tional. Defendant admits that the plaintiff "furnishes some pre-school kindergarten training" but concludes that "the primary use of the premises is for the furnishing of day care services in a similar fashion and for similar fees as other day care nurseries which are assessed and taxed by the county. The petitioner publicly advertises the furnishing of such services and the activities of Petitioner place it in direct competition with other day care centers which furnish day care service for profit."

These grounds for disallowance do not appear relevant to ORS 307.145, which reads:

"If not otherwise exempt by law, the schools, academies and student housing accommodations, owned or being purchased by incorporated eleemosynary institutions or by incorporated religious organizations, used exclusively by such institutions or organizations for or in immediate connection with educational purposes, are exempt from taxation."

The plaintiff has proved beyond a doubt that it is a religious corporation operating a school. The facts prove that this activity not only meets various educational standards and licensing requirements, but could also be described as a charity within the meaning of ORS 307.130. See *Ev. Lutheran Good Samaritan Society,* 5 OTR 14 (1972). The defendant's grounds for denial, in the context of the charitable aspects of Pre-School, appear to have misled the defendant to associate the requirements of ORS 307.130 with ORS 307.145, resulting in a denial of the exemption. This court concludes that once the "educational purposes" of ORS 307.145 are proved, under the ownership and direction of an incorporated religious organi-

zation, the plain language of the statute has been met and the exemption must be granted.

Even in the case of a claim for exemption under ORS 307.130, there appears no sin in advertising, and it must be patent that many exempt, nonprofit corporations, by legislative grace, are favored in competition with similar enterprises carried on for profit. This cannot automatically lead to a conclusion that "Petitioner's property is not exclusively used for or in immediate connection with educational purposes" as has been done in the defendant's order.

Here it is evident that plaintiff is an incorporated religious organization which uses the property in question exclusively for educational purposes in conjunction with the Christian beliefs of the Stone Church corporation.

The term "school" must be given its ordinary meaning—"an institution or place for instruction or education" (Black's Law Dictionary 1511 (4th ed, 1951)). This court concludes that Pre-School is "a place for instruction" and provides an educational learning experience through instruction and supervision by certified teachers. Instruction of nursery and pre-primary age groups is now recognized by authorities and knowledgeable parents as all-important to the individual child's development. The aspects of Pre-School's curriculum which appeared to defendant as intended to amuse the children are recognized by the court as having a planned educational value.

The court sees little difficulty in distinguishing day care from a school environment. The preponderance of the evidence weighs in favor of the plaintiff, as the educational and instructive purposes of this

institution make it a "school" as opposed to a "day care center."

For these reasons, the Department of Revenue's Opinion and Order No. VL 71-3 is set aside and the plaintiff is entitled to property tax exemption for the improved real property for the tax years in question.